UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

-v-

**DION L. ROSS, et al.,**

    **Defendants.**

Case No. 3:12-cr-151

Judge Thomas M. Rose

---

**ENTRY AND ORDER DENYING BURNEY'S MOTION TO SUPPRESS (Doc. #28); DENYING REED'S MOTION TO SUPPRESS (Doc. #31) AND DENYING ROSS'S MOTION TO SUPPRESS (Doc. #34)**

---

This matter comes now before the Court on three (3) motions to suppress filed in this case, one filed by Defendant Jeffrey Burney ("Burney") (doc. #28), one filed by Defendant Edward D. Reed ("Reed") (doc. #31) and one filed by Defendant Dion L. Ross ("Ross") (doc. #34). The Court conducted a hearing on these three (3) Motions (the "4/24/13 Hearing"). (Doc. #37.) The Court also set a briefing schedule which was subsequently amended. (Docs. # 39, 43.) Burney and Reed filed Briefs in support of their Motions. (Docs. #41, 45.)  Ross did not. The Government filed a Response In Opposition (doc. #47) and the time has run and none of the three Defendants has filed a reply. The three (3) Motions To Suppress are, therefore, ripe for decision. The findings of fact will first be set forth followed by the relevant legal provisions and an analysis of the Motions.

**FINDINGS OF FACT**

Ross, Burney and Reed have been indicted on various drug trafficking and conspiracy charges. (Doc. #7.) Their trial is currently scheduled to begin on August 5, 2013.

Burney was under supervision of the Ohio Adult Parole Authority beginning July 10, 2011. (4/24/13 Hearing Ex. 11.) Burney's completion date was listed as July 11, 2016. (Id.)

On June 30, July 1 and July 3 of 2012, Detective Andrew D. McCoy ("Detective McCoy") of the Montgomery County Sheriff's Department[1] sought and received from the Montgomery County Court of Common Pleas search warrants for 5360 and 5366 West Third Street in Jefferson Township, Montgomery County, Ohio; 9265 Great Lakes Circle in Washington Township, Montgomery County, Ohio; 1637 Sherwood Forest Drive in Miamisburg, Ohio; 4813 Northgate Court in Trotwood, Ohio; 1319 West Fifth Street in Dayton, Ohio; 2211 Robin Hood Drive in Miamisburg, Ohio; 246 Marlay Road in Harrison Township, Montgomery County, Ohio (the "Marlay Residence"); and 2044 Litchfield Avenue in Dayton, Ohio (the "Litchfield Residence"). (4/24/13 Hearing Exs. 3-8.)

In support of these warrants, Detective McCoy submitted multi-page Affidavits. (Id.) Six of these Affidavits are the same and the remaining two are somewhat different although the first fifteen (15) pages of all of the three different Affidavits are the same, and the remaining pages for the two Affidavits presumably include information learned after the first six were sworn. (Id.) The six Affidavits that are the same are seventeen (17) pages in length, one of the remaining Affidavits is eighteen (18) pages in length and the other is nineteen (19) pages in length. (Id.)

The Affidavits, which are authenticated by testimony and which the Court believes to be true, detail a drug and money laundering investigation concerning Ross, Reed and others. (Id.) According to Detective McCoy, law enforcement had received reliable, verified information

---

[1]For some unknown reason, the Government's Opposition Brief refers to Detective Josh Walters.

from several confidential sources regarding Ross's drug trafficking and money laundering. (Id.)

Confidential informants ("CIs") identified an association between Ross and a female identified herein as "D.B." that involved the transfer of vehicle titles or the improper procurement of false driver licenses. (Id.) Detective McCoy then located numerous assets registered to D.B. in the Dayton, Ohio metropolitan area. (Id.)  Based upon his training and experience, Detective McCoy concluded that D.B. assisted Ross's drug trafficking by supplying him with vehicles, cell phones and properties to use in his illegal activities. (Id.)

The Affidavits also detailed a series of controlled purchases of cocaine from Ross and his associates between October 2011 and May of 2013. (Id.) Two of these purchases involved the Marlay and Litchfield Residences. (Id.) Detective McCoy concluded that the Litchfield Residence, a property held in D.B.'s name, functioned as a drug stash house for Ross and that the Marlay Residence was being used as part of Ross's drug trafficking. (Id.)

On May 16, 2012, a confidential informant contacted Ross and ordered multiple grams of cocaine from him. (Id.) Reed ultimately provided the cocaine to the confidential informant in exchange for cash. (Id.) Reed then drove to the Marlay Residence, exited and went inside.

During late June of 2012, Ross indicated the ongoing nature of his drug activities to the confidential informant. (Id.) Law enforcement again conducted surveillance at several locations. (Id.)

On June 30, 2012, law enforcement observed a red truck registered to Burney parked at the Litchfield residence. (Id.) The registration listed the Litchfield Residence as Burney's address. (Id.) In addition, Detective McCoy found out that Burney was currently on parole through the State of Ohio for possession of drugs and felonious assault.  (Id.) Detective McCoy

also found that Burney had at least four (4) previous convictions for possession of crack cocaine. (Id.)

Law enforcement also conducted surveillance at the Marlay Residence. (Id.) On July 3, 2012, they observed a truck associated with Ross parked in the driveway. (Id. at Ex. 9, ¶ ZZ 7-10.) Shortly thereafter, they observed Ross exit the front door of the Marlay Residence carrying a large gift or shopping bag which he ultimately placed in the truck. (Id.)

Based upon the Affidavits provided by Detective McCoy, the Honorable Francis McGee of the Court of Common Pleas of Montgomery County, Ohio issued search warrants for the Litchfield Residence, the Marlay Residence, 5360 and 5366 West Third Street in Jefferson Township, Montgomery County, Ohio; 9265 Great Lakes Circle in Washington Township, Montgomery County, Ohio; 1637 Sherwood Forest Drive in Miamisburg, Ohio; 4813 Northgate Court in Trotwood, Ohio; 1319 West Fifth Street in Dayton, Ohio; and 2211 Robin Hood Drive in Miamisburg, Ohio. (4/24/13 Hearing Exs. 3-10.) On July 3, 2012, law enforcement executed these search warrants, and recovered multiple firearms, ounces of crack cocaine and other indicia of drug trafficking activity. (Id.)

## RELEVANT LEGAL PROVISIONS

Ross, Reed and Burney challenge the warrants issued to search the various locations. In addition, Burney challenges law enforcement's ability to search the Litchfield Residence based upon his parole status, and Reed challenges the alleged no-knock entry to his alleged residence at the Marlay Residence. Thus, the relevant legal provisions for search warrants and parolee searches will be set forth.

### Search Warrants

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment also provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Id. Probable cause for a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009)(quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)).

When reviewing an affidavit used by an issuing judge to determine probable cause, the reviewing court may look only at the affidavit. *Id.* If the affidavit does not set forth a substantial basis for finding probable cause, an issuing judge's probable cause determination may be reversed. *Id.* However, a warrant is upheld so long as the issuing judge had a "substantial basis for… concluding that a search would uncover evidence of wrongdoing…." *United States v. West*, 520 F.3d 604, (6th Cir. 2008)(quoting *Illinois v. Gates*, 462 U.S. 213, 216 (1983)).

To assess whether probable cause existed, a court is to review the totality of the circumstances. *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008). The court assesses the adequacy of all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of a confidential informant and law enforcement's corroboration of the informant's tip. *Id.*

**Use of Confidential Informants**

An affidavit is sufficient where a known person to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence in the recent past.

-5-

*United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005). For a confidential informant to be deemed known, the affidavit must acknowledge that the police know the informant's identity or that the identity has been disclosed under oath to the issuing judge. *Id.* 823.

Two factors are very important when determining whether an affidavit based upon a confidential informant's tip provides an acceptable basis for finding probable cause: (1) an explicit and detailed description of alleged wrongdoing; and (2) corroboration of the tip through independent investigation. *Martin*, 526 F.3d at 936. Where the tip is adequately corroborated, the confidential informant's veracity and basis of his or her knowledge are not as important. *Massachusetts v. Upton*, 466 U.S. 727, 731 (1984).

**Staleness**

A warrant must be supported by facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). Thus, stale information cannot be used in a probable cause determination. *Frechette*, 583 F.3d at 377.

Whether information is stale depends upon the inherent nature of the crime. *Id.* at 378. When analyzing whether information is stale, a court is to consider: (1) the character of the crime (chance encounter or regenerating conspiracy); (2) the criminal (nomadic or entrenched); (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder); and (4) the place to be searched (mere criminal forum of convenience or secure operational base). *Id.* "The passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *Hython*, 443 F.3d at 485. For example, the inclusion of outdated information in an affidavit is not

sufficient to render the entire affidavit stale when the affidavit establishes that the criminal activity is ongoing and continuous. *Id.*

### *Leon* Good-Faith Exception

Even if a warrant is invalid, evidence may not be excluded if the officers executing the warrant have a reasonable good-faith belief that the warrant is valid. *United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012). This is termed the "*Leon* good-faith exception." *Id.*

However, officers may not rely on a warrant that is "so lacking in indicia of probable cause as to render official belief it is existence unreasonable" or a warrant that is "so facially deficient that it could not reasonably be presumed valid. *Id.*(quoting *United States v. Richards*, 659 F.3d 527, 542 (6th Cir. 2011)). More specifically, the *Leon* good-faith exception does not apply: (1) where the issuing judge was misled by information in an affidavit; (2) where the issuing judge wholly abandoned her or his judicial role and failed to act in a neutral and detached fashion; (3) where the affidavit was nothing more than a bare bones affidavit that did not provide the judge with a substantial basis for determining probable cause; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable. *Hython*, 443 F.3d at 484.

### **Parolee Status**

"[T]he "probable cause" and warrant requirements of the Fourth Amendment generally do not apply to searches of parolees, probationers, or their residences." *Blackshear v. Cincinnati Adult Parole Authority*, 2012 WL 3288914 at *7 (S.D. Ohio Aug. 8, 2012)(citing *United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008)). Thus, a suspicion-less search of a parole is *a fortiori* reasonable and does not violate the Fourth Amendment, absent evidence that the search was conducted for some clearly improper purpose, such as harassment. *Id.*

The fact that Ohio law may provide greater protection, insofar as ORC § 2967.131 restricts warrantless searches to circumstances when parole officers have reasonable grounds to believe that the parolee is not abiding by the law or by the parolee's terms of supervision, does not mean that the Fourth Amendment provides the same protection. *Id.* Thus, under the Fourth Amendment, neither warrant and probable cause requirements apply to searches of parolees nor does the reasonable suspicion requirement in ORC § 2967.131 apply to searches of parolees. *United States v. Smith*, 526 F.3d 306, 310 (6th Cir. 2008).

## ANALYSIS

Burney, Reed and Ross have all filed Motions To Suppress. Each will be addressed seriatim.

### Burney Motion To Suppress

Burney argues that the search of the Litchfield Residence was unreasonable because it was not based upon probable cause or upon any reasonable suspicion that Burney was engaged in criminal conduct or violating the terms of his parole. The Government responds that, because of Burney's status as a parolee, he and his property could be searched absent any suspicion of criminal activity, that the warrant to search the Litchfield Residence was valid, and, if it was not, the *Leon* good-faith exception applies.

At the time of the search of his alleged residence, Burney was a parolee. As a parolee, federal law provides that a search of his residence does not violate the Fourth Amendment. While Ohio law may provide Burney further protection, it is federal law and not Ohio law that applies to the federal charges against Burney.

Further, the search warrant that authorized the search of the Litchfield Residence was

valid. The affidavit used to obtain the warrant to search the Litchfield Residence contained sufficient, non-stale information to establish probable cause to search the Litchfield Residence for, among other things, evidence of drug trafficking and money laundering activities. The affidavit used to obtain the warrant to search the Litchfield Residence indicated an ongoing and active drug conspiracy involving Ross and his associates.

Thus, the Fourth Amendment does not provide for the suppression of the warrant to search the Litchfield Residence. Also, Burney's property could be searched absent any suspicion of criminal activity. Finally, even if this warrant was invalid, the *Leon* good-faith exception applies because the law enforcement officers acted in good faith in relying on the search warrant and Burney has not argued otherwise. Therefore, Burney's Motion To Suppress (doc. #28) is DENIED.

## Reed Motion To Suppress

Reed argues that the affidavit supporting the warrant to search his home, the Marlay Residence, was stale and that the subsequent no-knock entry resulting from the warrant was unacceptable. The Government responds that the warrant to search the Marlay Residence was valid.

The Government offers no argument regarding the no-knock entry. Further, the Court is unable to find any evidence that there was a no-knock entry into the Marlay Residence. Therefore, this argument regarding a no-knock entry is unavailing and will not be further considered.

As with the search warrant that authorized the search of the Litchfield Residence, the search warrant that authorized the search of the Marlay Residence was valid. The affidavit used

to obtain the warrant to search the Marlay Residence contained sufficient, non-stale information to establish probable cause to search the Marlay Residence for, among other things, evidence of drug trafficking and money laundering activities. The affidavit used to obtain the warrant to search the Marlay Residence indicated an ongoing and active drug conspiracy involving Ross and his associates. In particular, between May and July of 2012, law enforcement directly connected this location to the ongoing drug conspiracy.

Thus, the Fourth Amendment does not provide for the suppression of the warrant to search the Marlay Residence. Further, even if this warrant was invalid, the *Leon* good-faith exception applies because the law enforcement officers acted in good faith in relying on the search warrant and Reed has not argued otherwise. Therefore, Reed's Motion To Suppress (doc. #31) is DENIED.

### Ross Motion To Suppress

Ross filed a Motion To Suppress any evidence seized from 5360 and 5366 West Third Street in Jefferson Township, Montgomery County, Ohio; 9265 Great Lakes Circle in Washington Township, Montgomery County, Ohio; 1637 Sherwood Forest Drive in Miamisburg, Ohio; 4813 Northgate Court in Trotwood, Ohio; 1319 West Fifth Street in Dayton, Ohio; and 2211 Robin Hood Drive in Miamisburg, Ohio. In his Motion, Ross asserts that the warrants issued for these properties lacked sufficient probable cause.

However, Ross did not follow the hearing on his Motion To Suppress with a memorandum in support. Thus, Ross has offered no reason to suppress any evidence seized from these properties.

If the reason offered were to be the validity of the applicable search warrants, Ross's

Motion To Suppress would be denied. As with the search warrants that authorized the searches of the Litchfield and Marlay Residences, the search warrants that authorized the search of 5360 and 5366 West Third Street in Jefferson Township, Montgomery County, Ohio; 9265 Great Lakes Circle in Washington Township, Montgomery County, Ohio; 1637 Sherwood Forest Drive in Miamisburg, Ohio; 4813 Northgate Court in Trotwood, Ohio; 1319 West Fifth Street in Dayton, Ohio; and 2211 Robin Hood Drive in Miamisburg, Ohio, were valid. The affidavits used to obtain the warrants to search these locations contained sufficient, non-stale information to establish probable cause to search for, among other things, evidence of drug trafficking and money laundering activities.

Thus, the Fourth Amendment does not provide for the suppression of the warrants to search the locations identified by Ross. Further, even if these warrants were invalid, the *Leon* good-faith exception applies because the law enforcement officers acted in good faith in relying on these search warrants and Ross has not argued otherwise Therefore, Ross's's Motion To Suppress (doc. #34) is DENIED.

## CONCLUSION

As more fully set forth above, all three Motions To Suppress are overruled. The trial of this matter is set to begin August 5, 2013.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-Ninth Day of July, 2013.

                                                            **s/Thomas M. Rose**

                                              THOMAS M. ROSE
                                  UNITED STATES DISTRICT JUDGE

Copies furnished to:

    Counsel of Record